66 F.3d 346
 NOTICE: Federal Circuit Local Rule 47.6(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
Beverly MONACO, Plaintiff-Appellant,
v.
The UNITED STATES, Defendant-Appellee.
 No. 95-5060.
 United States Court of Appeals, Federal Circuit.
 Sept. 13, 1995.
 
 Before NEWMAN, RADER, and BRYSON, Circuit Judges.
 DECISION
 PER CURIAM.
 
 
 1
 Beverly Monaco appeals from a decision of the Court of Federal Claims denying her claim for back pay. Monaco v. United States, No. 93-216C (Dec. 23, 1994). The court ruled against Monaco on the ground that she was not appointed to her higher-salaried position until after the period for which she sought compensation. We affirm.
 
 BACKGROUND
 
 2
 In 1989, Monaco was the Assistant Director of the Return Processing and Accounting Division of the Internal Revenue Service (IRS), a position that was compensated at the GM-15 salary level. In December of 1989, the Assistant Commissioner for Returns Processing proposed that Monaco's position be reclassified as a position in the Senior Executive Service (SES). The conversion was approved by the IRS Commissioner, and Monaco applied on a competitive basis for the new SES position.
 
 
 3
 In late 1990, Monaco was selected for the position. On December 4, 1990, Michael J. Murphy, the Deputy IRS Commissioner and Chairman of the IRS Executive Resources Board, signed a Standard Form (SF) 52, Request for Personnel Action, requesting that Monaco be promoted to the SES position. The IRS Commissioner authorized the request on the same day.
 
 
 4
 On January 10, 1991, Monaco received a letter from Murphy confirming her selection and advising her that the appointment was subject to certification of her executive managerial qualifications by a Qualifications Review Board (QRB) within the Office of Personnel Management (OPM). In addition, Monaco's appointment was subject to a background investigation.
 
 
 5
 On March 5, 1991, the QRB approved Monaco's SES qualifications, and on May 31, 1991, a form was completed certifying that Monaco's security background check was finished. Pursuant to IRS procedures, the Human Resources Division of the IRS contacted the Assistant Commissioner for Returns Processing to receive approval of the effective date of the appointment. After that approval was obtained, the Human Resources Division notified Deputy Commissioner Murphy of the impending appointment, as is the typical practice for such appointments within the IRS. Murphy expressed concern that the background investigation had been completed before the resolution of an ongoing investigation conducted by the IRS's Office of the Inspector General (OIG) regarding Monaco. According to IRS Manual Rule 32(10)(2), where simultaneous conduct and background cases are investigated, the conduct case should be resolved prior to, or simultaneously with, the background investigation. Murphy therefore instructed the IRS personnel office to postpone the appointment pending resolution of the OIG investigation.
 
 
 6
 On June 4, 1991, Monaco received a letter of congratulations from the Director of OPM. The letter welcomed Monaco to the SES, described the vital role the SES plays in government, provided her with brochures on the SES, invited her to attend a government-wide SES orientation program, and enclosed the SES lapel pin. Throughout 1991 and 1992, Monaco satisfactorily performed all duties of the SES position and received memoranda distributed to SES members. She was not, however, formally designated a member of the SES and was not paid at an SES salary rate.
 
 
 7
 The OIG investigation resulted in a finding that Monaco had submitted travel vouchers and lodging receipts claiming funds to which she was not entitled. The IRS then proposed that Monaco be suspended for 15 days as a penalty for the violations. On May 20, 1992, the agency sustained the reason for her suspension but reduced the penalty to a three-day suspension.
 
 
 8
 In June 1992, shortly after the final agency action on the OIG report, the Form SF-52 Request for Personnel Action was approved. An effective date of June 1, 1992, for the appointment was entered on the form at that time. A second form, the SF-50 Notice of Personnel Action, was subsequently signed by the Deputy IRS Commissioner. That form also reflected the effective date of Monaco's SES appointment as June 1, 1992.
 
 
 9
 Monaco filed a complaint in the Court of Federal Claims seeking the difference in compensation between the GM-15 salary she received and the higher SES salary to which she claimed to be entitled between June of 1991 and June of 1992. The court dismissed the complaint, holding that Monaco had failed to demonstrate that she had been appointed to the SES position prior to June 1, 1992, and had therefore failed to establish her entitlement to compensation at the SES rate. This appeal followed.
 
 DISCUSSION
 
 10
 Monaco's principal contention is that she was actually appointed to the SES position as of May 31, 1991, because both her background check and the QRB approval were completed by that date. In making that contention, Monaco relies on National Treasury Employees Union v. Reagan, 663 F.2d 239 (D.C.Cir.1981). There, the D.C.Circuit rejected the government's argument that completion of a Form SF-50 was an absolute prerequisite for an appointment. Id. at 242-46. The court noted that "[f]or more than one hundred and seventy-five years, the rule as to when an appointment takes place has been clear: 'when the last act to be done by the [appointing authority] was performed ...' " Id. at 242 (quoting Marbury v. Madison, 5 U.S. (1 Cranch) 137, 156 (1803)).
 
 
 11
 Monaco argues that once she was notified that she had been selected for the SES position her appointment was subject to only two conditions: the QRB review and the background check. As soon as those steps were completed, she claims, any other acts in the appointment process were ministerial in nature and could not delay the effective date of her appointment.
 
 
 12
 As the trial court noted, however, requests for appointments to SES status are not self-executing. Approval of the Treasury Department's Assistant Secretary for Administration was required to complete the appointment. That approval was not obtained until June of 1992. For the appointing authorities to wait until the final resolution of the misconduct charges against Monaco before approving her appointment to the SES position was both prudent and consistent with IRS Manual Rule 32(10)(2). As a legal matter, then, the last act necessary to be performed by the approving authority was not performed until June of 1992. Thus, Monaco was not appointed to the SES position until June 1, 1992.
 
 
 13
 Monaco also contends that by performing the duties of the SES position between June 1991 and June 1992, she received a de facto appointment to that position and was entitled to compensation at the SES salary rate, even in the absence of a formal appointment. The law is to the contrary, however. Federal employees serve pursuant to appointment and are entitled to the rights and salary of only the position to which they have actually been appointed. Spagnola v. Stockman, 732 F.2d 908 (Fed.Cir.1984). No monetary remedy is available in the Court of Federal Claims absent an actual appointment, which then enables the employee to premise a claim on the appropriate pay statute that mandates the payment of money. United States v. Testan, 424 U.S. 392 (1976).
 
 
 14
 In support of her claim, Monaco points to an IRS memorandum stating that a series of arbitration decisions has indicated that when employees spend a significant portion of their work time performing higher-graded duties, they have been effectively detailed to higher-graded positions and have become entitled to temporary promotions. As the government points out in its brief, if Monaco believes that a collective bargaining agreement entitles her to the back pay she seeks, she should pursue her enforcement rights pursuant to that agreement. The Court of Federal Claims, however, was correct in determining that Monaco does not have a valid claim before that court.